May it please the court and counsel I would like to reserve one minute for rebuttal. That's fine. I'm Phil Nino and I represent Fabian Vaksman in this matter. This is a situation where Mr. Vaksman was convicted at a jury trial under 18 U.S.C. 875 C and this was because he had emailed a threat from Spokane to a little bit of background. He had been hired by the Air Force in 2005 and brought up from Houston to work as a group historian for the Air Force in Spokane and he was fired soon after. A Seattle law firm declined to represent him after his own EEOC complaint failed after he was terminated from the Air Force and because of his dialogue with that Seattle advocacy law firm he was We're pretty familiar with the record. Why don't you focus and tell us why was it the March 20th email? Certainly your honor and I've got the I can't remember exactly. In the brief at the bottom of the page. Why doesn't that constitute a true threat? Well because first of all the case law tells us that we look at the entire context of this language and when you do that it appears that the language is all that the government had here. If you look at the context this gentleman stayed in Spokane. He never even came over to Seattle. In fact that's what got him in trouble because he did not appear in municipal court and so he was issued a notice of a warrant. The language looks pretty scary doesn't it? I'm sorry. The language looks pretty scary doesn't it? So then the question is you know if objectively let's assume that's a separate element. If objectively somebody might be a little bit nervous getting that language then the question is did he intend right I guess that's the way we put it. Did he intend to convey that route? Did he intend it? Exactly and if you look at the And a jury looked at everything and said yep we think so. We don't believe his story about oh I just like to use strong language. The story was corroborated throughout the emails that came into exhibits and throughout the testimony that his feeling that he had a duty to express himself in polemic rhetoric maybe somewhat repugnant and an acerbic ways. However that's all you have if you look at the rest of the context. Unlike Bagdasarian this gentleman had no history of involvement with guns. He remained in Spokane. There's no evidence he came over here. Of course that got him in trouble because that got him the warrant. But in Bagdasarian wasn't the key issue that what was alleged to be a threat there was really a prediction that other people would harm the presidential candidate or that the appellant in that case was actually encouraging other people to harm. Whereas in this March 20th email it's pretty explicit if I were to murder him it's much more explicit that Mr. Vaxman was intending to carry out the threat himself versus trying to incite others. First of all if yes your honor he said if I were to but the big the big point the court raises your honor raises is that in Bagdasarian and in Planned Parenthood these people who were making these statements published him to the public. Here we have Mr. Vaxman and his audience is who? United States Deputy United States Marshals, an assistant U.S. Attorney. Is that better or worse? I would say it's better because if you send something to the newspaper that says somebody should take that Fernandez out of action that's better than if you write to me I'm able to take the law into my own hands but if you were shot down, how did he put it, you should be murdered and self-defense would be an awfully good defense for me. So if he sends me that letter that's less of a threat than if he says somebody ought to take me out? Technically he did not he did not send it directly to the Commissioner. Okay fine. We know that he probably knew it was going to get to him. So my question is then it's less it's less of a threat if he sends it to me than if he published it in the newspaper? I would think so because look at who's looking at this situation you've got government law enforcement officials there's some United States Air Force officers these are all career government upstanding folks that he's communicated to but if I communicate it through the newspaper to the whole world who are you going to attract and who are you going to incite to take this action that you're talking about and I think that very point shows that this was mere speech and if you look at it with again with the other context for example the conditional language there's no planning whatsoever the his computer was seized upon search of his apartment and nothing indicated any sort of a plan or any sort of anything backing this up. Doesn't the fact that Mr. Vaxman sent it to the government officials that you and the lawyer for Judge Eisenberg support actually that there was subjective intent that this be a threat if he sent it to the people who basically previously told him that your language is of concern to people you need not to do that and the fact that he went ahead and did it anyway why doesn't that support that he really had the subjective intent for this to be a threat a true threat? Well first of all he when he was on different occasions he explained to him to them that this was his intent and he had no mal intent toward whoever whomever his targets were during those prior emails but as far as if you recall and and I know I'm going to switch to objective intent to answer your question your honor Commissioner Eisenberg testified that it said murdered in it I don't care if it was conditional or not it said murdered Commissioner Eisenberg and this goes to Mr. Vaxman specific intent I believe he wasn't told of the entire background of how this guy is a prolific writer and he has been emailing to all these officials regarding his concerns about this case or that case and so forth I think it all points to a lack of specific intent to any harm and even Commissioner Eisenberg said the fact that it had murdered in it that's all I cared about and remember he was only given two proximal emails one of them was the subject of the indictment he wasn't given any history of this guy and and his his loquaciousness his ongoing dialogue again not very pleasant just like the ruling in Bagdasarian Mr. Vaxman may be looked upon as not a very pleasant fellow so I would I assert that that all goes to lack of specific intent mere language he never followed up on anything before his prior communications all right do you want to save a minute and 16 seconds for rebuttal I do all right do you have any questions at this point any more questions if we do we'll use up your minute may please the court counsel my name is Tyler Tornabene I represent the United States of America and this case as your honors are aware the evidence at trial was sufficient for a jury to find beyond a reasonable doubt that the defendant did in fact communicate what's the jury's role in this in this kind of case your honor that's that's a very interesting question given the standard of right issues and I think that's a very important point to address at the which is the defendant argues in his briefing that this is a de novo review and then kind of in the alternative says well maybe it's not it's very clear to state this is not a de novo review for this court in this court in Hannah after Planned Parenthood I think really clarified this is a two-step process for this court the first step is the more familiar and deferential standard of viewing the facts and like most people to the government could any rational trier of fact have found the essential elements of the crime beyond a reasonable doubt once this court makes that determination which here this court should then because there are obvious First Amendment implications to a true threat threat case Planned Parenthood and Hannah would have you move on to the second step which is that independent review of the facts to see if the core constitutional fact of a true threat has been met what's key here is that an objective inquiry on our part your honor I don't know if objective is how would be the best way to describe it and that's a little confusing here because true threat has objective and subjective components however what it is is this court would be bound by the facts non core constitutional facts as found by the jury that includes historical facts that includes undisputed facts and very significantly here it includes credibility determinations by the jury and that's very important for instance when looking at the core constitutional fact of subjective intent the defendant testified that he used things sort of metaphorically that murder was a metaphor for prosecution the jury nonetheless found him guilty was properly instructed on the subjective intent clearly rejected that that's a credibility determination of the jury made that this court is bound by in its independent review so to put it another way the jury in its determination has sort of defined the universe of the non core constitutional facts for your honors your honors independent review should then look at those facts and see if in your independent judgment they add up to the core constitutional issue of a objective serious expression of intent to injure or kill subjectively so intended and when your honors look at this record especially as defined by the jury as it must be for instance the credibility determination against Mr. Boxman on those key points the evidence clearly shows that in fact this was a serious expression of intent to kill or injure and was so intended by the and I think there's some confusion in the defendant's brief and in the defendant's argument it's important to define and I guess reiterate from the clear case law what is and is not part of that analysis it is not a requirement of a true threat either statutorily under 875 subparagraph C or constitutionally that there be any imminency or immediacy to the threat it's simply not required it is not required that but what if we look at in Bagdasarian the appellant actually had the you know 50 caliber he had actually the weapons in his possession that would have enabled him to carry out what was in his blog may be using unfortunately flowery language but he had no ability to carry out and actually execute on any of these threats because he's in Spokane he doesn't have weapons your honor the the fact of and I think the record is very clear the and you're correct the defendant did not have weapons there's no evidence that he had an ability or an that is not required for the conviction is and I think this is maybe what your honors question sort of goes to if those facts are present that is clearly relevant in a determination of the defendant's subjective intent it's not required but those would certainly be relevant facts they were relevant in Bagdasarian however and we have to sort of find that objectively a true threat yes that a requirement in addition to whether Mr. Baxman had the subjective intent for this to be a true threat yes your honor it is however in that analysis that would be where the speaker's ability to carry it out is not I suppose it could be a relevant factor however that is not a very relevant factor and the reason is is that what the reason true threats are not protected under the First Amendment is not because somebody may or may not carry it out that's certainly part of it but I would say the the gravamen of it is that that kind of speech instills fear regardless of the ability or intention of the person to carry it out strong enough words in the context such as the March 20th email where you have the defendant making statements very clearly I would be the actor I Vox movie actor potentially murdering Commissioner Eisenberg that sort of language is not protected because it instills fear when we look at it from an objectively reasonable listener the victim's viewpoint is certainly a relevant factor in that analysis but so is the reaction of other listeners such as the marshal service here that communicated that to the court security for Commissioner Eisenberg because they took it as a serious expression especially in the context of what they were dealing with Mr. Voxman had been warned on previous occasions that his comments were instilling fear in people specifically a USA Viviano and we said that was in weeks before the March 20th email and yet in an email and I forget the precise date but it's after that March meeting with the marshals prior to the March 20th email Mr. Voxman sends an email in part to Deputy Marshal Kevin Kilgore stating that essentially I understand that I'm creating fear in people and if they would just do what I want them to do I wouldn't have to do that and that's a clear indication that he is attempting to leverage the fear he creates to accomplish various goals and that is the essence of a threat and that's why under the objective analysis as well as the subjective analysis did the jury do what how was the jury instructed on the objective subjective issues your honor they were they were instructed on both of those elements that they needed to find both an objectively truth threat so defined under the case law primarily in black as well as that the defendant subjectively intended his communication as a threat so we're just taking it I guess in your I'm still trying to understand exactly what you know how much scrutiny we're supposed to give to the First Amendment implications your honor it's it's an interesting standard of review what I believe is important in this court is and I think the touchstone is to look at the reasons for that second step in the process and the reason is to make sure that a jury verdict does not impinge on constitutionally protected speech even giving that deference to the jury and the way that the case law as explained in non-core facts that the jury finds that needs to be preserved but then in this court's independent review in looking at those facts does that add up to an objective truth threat and a subjective intent in this case a review of the record that does show that in fact it does and I think it is it bears really I there's an attempt by the defendant to analogize this to Bagdasarian Bagdasarian was very different factually and in the brief time I have left the key issues in Bagdasarian that make it different than this case are first it was in a public forum an online message board and a non-violent one like a Yahoo Finance message board and secondly and this was mentioned by the court in Bagdasarian multiple times the statements in Bagdasarian while very offensive did not contain the idea of I will shoot President Obama here we have clear indication from Mr. Voxman that he would be the actor murdering Commissioner Eisenberg and for that reason I ask that you affirm the conviction. Thank you counsel. Just in rebuttal and briefly your honors Bagdasarian in addition to possessing a .50 caliber rifle that he talked about shooting then candidate Obama and he along the lines of racial hatred he talked about clink, clink, clink now the court brought up and I did not bring up the jury deliberation issue as the court can see from the brief they deliberated for an hour and 40 minutes and that included lunch and that included. But which way does that cut does that mean that the evidence was overwhelming so the jury didn't need a lot of time or. I don't I can't see I think the bottom line is it should have been a legal decision rather than a decision made by a jury a factual decision made by a jury because I don't think they fully understood the scrutiny required to analyze the situation. And there was no challenge to the jury instructions correct. There was not and the jury instructions did require specific intent and objective intent that's correct but how could they have in the 20 minutes left how could they have read in ER 109 to 125 we've got the various e-mails and most of them are full single space full page. Well they were there the jury the trial lasted what a day and a half. Yes about. Right. All right. You're over your time now. Thank you counsel. Thank you.
judges: Koh, Fernandez, Paez